IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY STEPHANO, | : | |
|     Plaintiff | : | |
| | : | |
|     v. | : | 3:CV-07-0743 |
| | : | (JUDGE VANASKIE) |
| TRI-ARC FINANCIAL SERVICES, INC., | : | |
| FRONTIER ADJUSTERS, FRONTIER | : | |
| ADJUSTERS, INC., LEXINGTON | : | |
| INSURANCE COMPANY, | : | |
|     Defendants | : | |

## MEMORANDUM

This action stems from an insurance company's objection to paying first-party benefits to reimburse a third-party beneficiary's medical expenses for alleged injuries resulting from a motor vehicle accident. Plaintiff Kimberly Stephano has sued Tri-Arc Financial Services, Inc. ("Tri-Arc"),[1] Frontier Adjusters and Frontier Adjusters, Inc. (collectively "Frontier"), and Lexington Insurance Company ("Lexington") for breach of contract and violations of 42 PA. CONS. STAT. § 8371, the Pennsylvania bad faith statute, and the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 PA. CONS. STAT. §§ 1701 et seq. Specifically, Ms. Stephano alleges that Lexington, individually and through its authorized agents, Frontier and Tri-Arc, failed to pay third-party benefits in breach of its contract with Bama Leasing (also

---

[1] It does not appear that Plaintiff has effected service of process on Defendant Tri-Arc. (See Case Management Plan, Dkt. Entry 13, at 14.)

known as Auto Trakk, LLC ("AutoTrakk")) (Compl. ¶¶ 33-43), and acted in bad faith by, among other things, stalling, delaying and refusing to promptly pay benefits without a reasonable basis.[2] (Id. at ¶ 47.)

Defendant Frontier moved to dismiss Plaintiff's breach of contract claim and both Defendants Frontier and Lexington moved to dismiss Plaintiff's claim of bad faith under 42 PA. CONS. STAT. § 8371.[3] (Dkt. Entries 3, 6.) Defendant Frontier's Motion to Dismiss will be granted as to Plaintiff's bad faith claim because Plaintiff is unable to allege facts from which it may be inferred that Frontier is an "insurer" within the meaning of 42 PA. CONS. STAT. § 8371. Defendant Lexington's Motion to Dismiss Plaintiff's § 8371 bad faith claim will be denied because, contrary to Lexington's argument, Plaintiff's bad faith claim is not preempted by 75 PA. CONS. STAT. § 1797.

I. BACKGROUND

On June 27, 2005, Ms. Stephano was involved in a motor vehicle accident while a passenger in a Pontiac Grand AM SE1 leased by Bama Leasing to Deborah Hodgins. (Compl. ¶¶ 6 & 10.) Ms. Stephano sustained cervical and lumbar injuries as a result of the accident. (Compl. ¶ 13.) She received treatment for her injuries from Dr. Leroy Pelicci, M.D., and Valley

---

[2]This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

[3]Subsequent to the filing of this lawsuit Lexington paid Ms. Stephano's medical bills, and the parties agreed at a case management conference held on August 9, 2007, that the breach of contract claim should be dismissed. Thus, there is no need to consider Frontier's challenge to the breach of contract claim.

Open MRI. (Id. at ¶ 15.) Her medical bills totaled more than $5,480. (Id. at ¶ 31.)

Ms. Stephano did not own a motor vehicle and was not a named insured on any policy of automobile insurance. (Id. at ¶ 8.) She attempted to recover her medical costs through the insurance policy of Deborah Hodgins, the lessee of the Pontiac Grand AM SE1. Ms. Hodgins apparently maintained an insurance policy with Progressive Insurance Company ("Progressive Insurance"). Upon contacting Progressive Insurance, however, Ms. Stephano learned that Ms. Hodgins' policy had lapsed. (Id. ¶ 18.)

Concluding that she was not covered under any policy of automobile insurance, Ms. Stephano applied for assistance through the Pennsylvania Assigned Claims Plan ("PACP"). The PACP denied her application because Bama Leasing, the owner of the Pontiac Grand AM SE1, was required to carry an insurance policy on the vehicle and would in fact be responsible for providing coverage. (Id. ¶ 19.)

Ms. Stephano followed up with Bama Leasing, which informed her that the vehicle was covered through E-Surance and that she should contact it. (Id. at ¶ 20.) Ms. Stephano complied and contacted E-Surance, which advised her that its policy was no longer in effect on the day of the accident. (Id.; Ex A., Dkt. Entry 6-2, at 15.)

On July 13, 2006, since both E-Surance and Progressive Insurance had denied having a policy in effect on the date of the accident, Ms. Stephano submitted a claim for first-party benefits to Bama Leasing. In a letter written by her attorney to Bama Leasing requesting a

3

Personal Injury Protection ("PIP") application, Ms. Stephano indicated that E-Surance denied coverage of the vehicle and she was consequently asserting a claim on Bama Leasing's own insurance policy. (Id. at ¶ 21; Ex. B, Dkt. Entry 6-2, at 17.)  Bama Leasing responded, advising Ms. Stephano that Tri-Arc would manage her insurance claim.

Over the next few months Ms. Stephano made repeated requests for a PIP application from Tri-Arc, but to no avail. (Id. at ¶ 22.)  Then, almost four months after her original request, Ms. Stephano's attorney mailed Bama Leasing a second letter, dated October 5, 2006, requesting a PIP application and explaining that Bama Leasing's continued failure to produce the PIP application could result in the filing of a bad faith claim under 42 PA. CONS. STAT. § 8371 and the MVFRL.  (Ex. C, Dkt. Entry 6-2, at 19.)  Finally, on October 17, 2006, Tri-Arc faxed Ms. Stephano a PIP application.  (Ex. D., Dkt. Entry 6-2, at 22-23.)

Ms. Stephano completed the application and submitted it to Tri-Arc on November 2, 2006.  After waiting over a month for a response, Ms. Stephano's attorney wrote another letter to Bama Leasing, dated December 13, 2006, inquiring why Ms. Stephano's medical bills had not been approved or reduced.  (Ex. F, Dkt. Entry 6-2, at 29.)

In January, Frontier, a business organized under the laws of the Commonwealth of Massachusetts, informed Dr. Pelicci that it was "working on behalf of Lexington Insurance Company and their insured Auto Trakk, LLC, (also known as Bama Leasing) in reference to" Ms. Stephano's claim.  (Ex. G, Dkt. Entry 6-2, at 33-34; Compl. ¶ 3.)  Frontier advised Dr.

Pelicci that an investigation was conducted to determine whether or not the Lexington policy issued to Auto Trakk was applicable to this specific loss. (Ex. G, at 33-34.) This investigation revealed that Progressive Insurance "had an active policy on the vehicle at the time of loss" (effective until October 30, 2005), and that a "file and claim number were assigned on 12/21/2006." (Id.)

Later that month, Dr. Pelicci notified Ms. Stephano that Frontier had conducted an investigation finding Progressive Insurance had an active policy at the time of the accident. (Compl. ¶ 28.) Ms. Stephano then attempted to contact Frontier to advise them that the policy by Progressive Insurance had expired, but never received a return phone call. (Id. at ¶ 29.)

On March 23, 2007, Ms. Stephano filed this action in the Court of Common Pleas of Lackawanna County. One month later, on April 23, 2007, Defendant Lexington removed the case to this Court. (Notice of Removal, Dkt. Entry 1.)

II. DISCUSSION

A. Standard for Rule 12(b)(6) Motion to Dismiss

In considering a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pled facts of the complaint as true, as well as all reasonable inferences drawn therefrom. Javorski v. Nationwide Mutual Ins. Co., No. 3:06-CV-1071, 2006 WL 2225851, at *7 (M.D. Pa. Aug. 2, 2006). A motion to dismiss under Rule 12(b)(6) should only be granted where "'it appears beyond doubt that the plaintiff

can prove no set of facts in support of his claim which would entitle him to relief.'" Id. at *6 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  The moving party bears the burden to establish the absence of an actionable claim.  Id. at *7 (citing Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980)).

   B.  Frontier's Motion to Dismiss

The general Pennsylvania statute authorizing recovery for an insurance company's bad faith towards an insured is codified as 42 PA. CONS. STAT. § 8371, which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

42 PA. CONS. STAT. § 8371.  Frontier argues that Ms. Stephano cannot allege facts to show that it is an "insurer" within the coverage of § 8371.

"There is no simple rule for determining who is the insurer for purposes of the bad faith statute."  Brown v. Progressive Ins. Co., 860 A.2d 493, 498 (Pa. Super. Ct. 2004).  Consequently, courts have taken a fact based approach, focusing on two factors: "(1) the extent to which the company was identified as the insurer on the policy documents; and (2) the extent to which the company acted as an insurer."  Id.; see Barry v. Ohio Cas. Group, No. Civ.A.3:04 188, 2007 WL 128878, at *4 (W.D. Pa. Jan. 12, 2007).  The most important factor is

the second. Id. Courts have also looked to other statutes in attempting to define "insurer." For example, the Insurance Department Act of 1921, as amended, 40 PA. STAT. CONS. § 221.3, defines an insurer as: "'[a] person who is doing, has done, purports to do, or is licensed to do an insurance business, and is or has been subject to the authority of, or to liquidation, rehabilitation, reorganization or conservation by any insurance commissioner.'" Lindsey v. Chase Home Finance, LLC, No. 3:CV-06-12200, 2006 WL 2524227, at *4 (M.D. Pa. Aug. 30, 2006) (citing Southeastern Pa. Transp. Authority v. Holmes, 835 A.2d 851, 856-857 (Pa. Commw. Ct. 2003).

Frontier's alleged actions in this case consist of conducting the investigation of Hodgins' supposed policy with Progressive Insurance.[4] Accepting Plaintiff's allegations as true, they fall short of pleading that Frontier issued the insurance policy in question, assumed any risks or contractual obligations under the policy, or was licensed to conduct insurance business in Pennsylvania. These allegations, and any inferences drawn therefrom, are therefore

---

[4]The Complaint states:

28 . . . Defendant Frontier Adjusters and Defendant Frontier had advised them that their investigation had revealed that a policy of insurance by Progressive Insurance was active and had coverage for the loss on June 27, 2005 and that the providers should send their bills to Progressive.

29. That Plaintiff attempted to contact Frontier Adjusters several times by telephone to explain to them she had already contacted Progressive and verified that they did not have coverage of the Pontiac GrandAM on June 27, 2005, but did not receive a return call.

insufficient to plead that Frontier was indeed the insurer of the Bama Leasing vehicle. Moreover, as Lexington has now adjusted Ms. Stephano's medical benefits claim as the applicable "insurer," it is clear that Ms. Stephano is unable to allege any facts that would place Frontier in that category. Accordingly, because Plaintiff is unable to allege that Frontier is an insurer under 42 PA. CONS. STAT. § 8371, her claim against it will be dismissed. See Margaret Auto Body, Inc. v. Universal Underwriters Group, No. 01750 MAY TERM 2002, 2003 WL 1848560, at *1-2 (Pa. Commn. Pl. Jan. 10, 2003).

    C. <u>Lexington's Motion to Dismiss</u>

Defendant Lexington also objects to Plaintiff's claim under 42 PA. CONS. STAT. § 8371, arguing that the general bad faith statute and the specific MVFRL provision concerning "overdue benefits" conflict, thus barring any type of recovery under the general bad faith statute. (Def. Lexington's Br. Supp. Mot. To Dismiss, Dkt. Entry 4, at 3.) Specifically, Lexington contends that § 8371 and the MVFRL provide inconsistent remedies for an alleged wrongful failure to pay benefits. It argues that the more specifically applicable provision set forth in of 75 PA. CONS. STAT. § 1797 affords the exclusive avenue of relief here. Hence, Lexington seeks dismissal of the § 8371 bad faith claim.

The MVFRL became effective October 1, 1984, providing a mandatory program of motor vehicle insurance. See Williams v. State Farm Mut. Auto. Ins. Co., 763 F. Supp. 121, 125 (E.D. Pa. 1991). Essentially, the act required "[a]n insurer issuing or delivering liability insurance

8

policies covering any motor vehicle . . ." to provide medical benefit-coverage "for reasonable and necessary medical treatment and rehabilitative services." 75 PA. CONS. STAT. § 1712. At that time, the MVFRL had no specific procedure for evaluating claims.

The Pennsylvania legislature substantially amended the MVFRL in passing Act 6 on February 7, 1990. Act 6, among other things, substantially modified the statutory requirements for coverage of an insured and established a detailed procedure for the review and payment of claims by an insured.[5] Williams, 763 F. Supp. at 125. Under § 1797 of the MVFRL, the legislature set up a peer review plan by which an insurer could challenge the reasonableness and necessity of an insured's treatment. Insurers were required to contract with a peer review organization ("PRO") "for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary."[6] 75 PA. CONS. STAT. § 1797(b)(1).

If the PRO finds in favor of the insured, meaning the "medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay the outstanding amount plus interest at 12% per year." § 1797(b)(5). If the insured chooses instead to bring a court action and the court finds in the insured's favor, the insurer is required to pay the same

---

[5]Section 3 of Act 6 also added the general bad faith statute, 42 PA. CONS. STAT. § 8371, under which Ms. Stephano proceeds in this case. Williams, 763 F. Supp. at 126-127.

[6]"If the insurer challenges [the medical expenses] within 30 days of receipt of a bill for medical treatment or rehabilitative services," the insurer is not required to make any payments until the review is completed. § 1797(b)(3).

9

amount, along with all attorney fees and the costs of the challenge. § 1797(b)(6). An insured or medical provider may contest an insurer's refusal to pay where the insurer has not availed itself to a PRO determination. § 1797(b)(4). In adding teeth to this provision and in an effort to encourage insurers to seek PRO reviews, the Pennsylvania legislature provided that any wanton conduct on behalf of an insurer would require the payment of treble damages to the injured party. Id.

Lexington argues that canons of statutory construction compel the conclusion that Ms. Stephano may only seek recourse under 75 PA. CONS. STAT. § 1797. In particular, Lexington relies upon 1 PA. CONS. STAT. § 1933, which provides:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 PA. CONS. STAT. § 1933. Lexington argues that 42 PA. CONS. STAT. § 8371 and 75 PA. CONS. STAT. § 1797 conflict irreconcilably, mandating that the specific provision, § 1797, prevail.

Because the Supreme Court of Pennsylvania has not addressed the issue whether § 1797 preempts § 8371, this Court must predict how the Supreme Court of Pennsylvania would decide the issue. As a general rule, "a plaintiff may not seek punitive damages under § 8371 where he or she is complaining of the denial of first-party benefits determined through the

process outlined in § 1797." Schwartz v. State Farm Insurance Co., No. CIV. A. 96-160, 1996 WL 189839, at *4 (E.D. Pa. April 18, 1996) (citing Gemini Physical Therapy & Rehabilitation, Inc., v. State Farm Mut. Auto Ins. Co., 40 F.3d 63, 67 (3d Cir. 1994). In other words, § 1797 preempts § 8371 where both are applicable.[7] Harris v. Lumberman's Mut. Cas. Co., 409 F. Supp. 2d 618, 620-621 (E.D. Pa. 2006)

Consistent with 1 PA. CONS. STAT. § 1933, however, courts have recognized that a § 8371 claim is not preempted when an insurance company's alleged malfeasance goes beyond the scope of Section 1797, or "is obviously not amenable to resolution by the procedures set forth in section 1797(b)." Seeger v. Allstate Ins. Co., 776 F. Supp. 986, 990 (M.D. Pa. 1991). These situations arise when the allegations do not invoke the remedies and procedures in § 1794(b), such as a claim concerning contract interpretation, a claim of abuse of process, or a dispute over whether a motor vehicle accident caused the medical expenses.[8] In these

---

[7]See, e.g., Riddell v. State Farm Fire and Cas. Co., No. 1: CV-91-1461, 1992 WL 209971, at *1-2 (M.D. Pa. July 9, 1992); Danley v. State Farm Mut. Auto. Ins. Co., 808 F. Supp. 399, 401 (M.D. Pa. 1992); Schleinkofer v. National Cas. Co., 339 F. Supp. 2d 683, 686 (W.D. Pa. 2004); Cronin v. State Farm Mut. Auto. Ins. Co., No. 3:06-CV-1081, 2006 WL 3098473, at *2 (M.D. Pa. October 30, 2006); Williams v. State Farm Mut. Auto Ins. Co., 763 F. Supp. 121, 126-27 (E.D. Pa. 1991).

[8]See, e.g., Seeger v. Allstate Ins. Co., 776 F. Supp. 986, 990 (M.D. Pa. 1991) (finding the question of whether the plaintiff's medical expenses are covered at all under a policy because of a contract exclusion dealing with motorcycles or motor bikes not within the scope of § 1797(b)); Schwartz, 1996 WL 189839, at *8-9 (permitting the plaintiff to proceed under the bad faith statute on allegations of abuse of the PRO process); Daumer v. Allstate Ins. Co., 1992 WL 57673, at *2-3 (E.D. Pa. March 18, 1992) (concluding the statutes reconcilable in a dispute as to whether the injury to which the medical expenses were attributable was causally

11

situations, courts have reconciled the two statutes and found bad faith claims to supplement claims under § 1797. See Schwartz, 1996 WL 189839, at *8-9.

The pivotal question in regard to Plaintiff's claim is whether Plaintiff's allegations fall within the purview of § 1797, thus invoking the processes and remedies established therein. Plaintiff alleges that Lexington, individually and through its agents, violated § 8371:

a. By unilaterally denying benefits without sufficient foundation to do so;
b. By failing to promptly investigate the claim for benefits;
c. By denying benefits based upon an alleged policy of insurance with Progressive without first having received confirmation from Progressive that they would pay;
d. By stalling, delaying and refusing to promptly pay benefits without any good and fair reason;
e. By refusing to pay benefits due under the policy when it knew, or should have known, it has no reasonable basis to do so;
f. In failing to display a reasonable and sufficient basis for denying Plaintiff's claims;
g. In failing to investigate Plaintiff's medical benefits claim in good faith;

---

related to a motor vehicle accident); Grove v. Aetna Cas. & Sur. Co., 855 F. Supp. 113, 115 (W.D. Pa. 1993) (same); Champlost Family Med. Practice, P.C., v. State Farm Ins., No. CIV. A. 02-3607, 2002 WL 31424398, at *2 (E.D. Pa. Oct. 29, 2002) (permitting claims to proceed under both statutes because plaintiff "is not alleging that a peer review association wrongfully denied first-party benefits"); Panameno v. State Farm Mut. Auto. Ins. Co., No. CIV.A. 99-1490, 1999 WL 320916, at *1 (E.D. Pa. May 19, 1999) (allowing plaintiff to pursue her claims under both statutes); Carson v. ITT Hartford Ins. Group, Civ. A. No. 91-3113, 1991 WL 147469, at *3 (E.D. Pa. 1991) ("[W]here a person's policy is revoked without cause or for an improper cause, the procedures and remedies in § 1797 do not apply and a 'claim' under § 8371 might lie."); Milton S. Hershey Med. Center v. State Farm Ins. Co., No. 1992-298, 1992 WL 696596, at *5-6 (Pa. Commn. Pl. Ct. Dec. 8, 1992); Olsofsky v. Progressive Ins. Co., No. 01-CV-666, 2001 WL 1809818 (Commn. Pl. Ct. Aug. 23, 2001); Smith v. Zarnick, No. 99-10625, 2000 WL 33239952, (Pa. Commn. Pl. April 11, 2000); Pipchock v. State Farm Ins. Co., 140 Pitt. L.J. 185 (C.C. Allegheny 1992).

> h.  In failing to display any evidence that would account for its rejection of this claim;
> i.  By conducting itself in such a manner as to breach a known duty of good faith and fair dealing.
> j.  By not attempting, in good faith, to effectuate prompt, fair and equitable coverage of claims once the Defendant's responsibility under its policy of insurance had become reasonable [sic] clear, in violation of 40 Pa.C.S.A. § 1171.5(10)(vii);
> k.  By failing to properly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for the denial of the claim, in violation of 40 Pa.C.S.A. § 1171.5(10)(vii).

(Compl. at ¶ 47.)

Plaintiff's allegations are essentially a wrongful refusal of liability claim.  Plaintiff is challenging Lexington's refusal to take responsibility for coverage of her claim without adequate basis and Lexington's decision to direct the Plaintiff toward another insurer without sufficient investigation.   Plaintiff is not challenging a PRO determination or Lexington's proper or improper actions under § 1797.  Nor is Plaintiff attempting challenge Lexington's refusal to pay on the ground that her medical expenses were unreasonable or unnecessary.  Lexington has simply denied liability for coverage under the policy, as did the insurance company in <u>Seeger</u>.  See <u>Seeger</u>, 776 F. Supp. at 991 (finding that the procedures and remedies of § 1797 do not apply when an insurance company has denied there is any coverage at all).

Indeed, it does not appear that Plaintiff's allegations fit within § 1797, since by explicit language the PRO process is limited to the question of whether "treatment, products, services or accommodations conform to the professional standards of performance and are medically

13

necessary."[9] 75 PA. CONS. STAT. § 1797(b)(1); see 75 PA. CONS. STAT. § 1797(b)(4)-(7); Daumer, 1992 WL 57673, at *3.  This is not a case that falls under § 1797(b)(4), i.e., an insurer refusing to pay a claim because the treatment was unreasonable or unnecessary without submitting the matter to the peer review process.  In short, Plaintiff is alleging a wrongful refusal of liability claim unrelated to § 1797, thus placing her claim beyond the scope of § 1797.  See Harris, 409 F. Supp. 2d at 621 n.4.

Defendant Lexington and Plaintiff heavily contest the significance and applicability of Barnum v. State Farm Mut. Auto. Ins. Co., 635 A.2d 155 (Pa. Super. Ct. 1993) rev'd, 652 A.2d 1319 (Pa. 1994), to this case.[10]  Plaintiff claims that Barnum is dispositive as § 1797 is limited to remedies connected to the PRO process (Br. Opp'n Def. Lexington's Mot. To Dismiss, Dkt. Entry 12, at 7), while Lexington argues that Barnum is directly applicable and this "case is squarely within the scope of Section 1797 . . . ."  (Def. Lexington's Mot. To Dismiss, Dkt. Entry 4, at 9.)

Following a motor vehicle accident in which he sustained injuries to his person, Plaintiff Leroy Barnum received medical treatment and subsequently made a claim against State Farm

---

[9]From the explicit, narrow language of the statute, it is evident that the legislature intended that § 1797 only govern the issue of whether the medical treatment was necessary or reasonable.

[10]The precedential value of Barnum is questionable as the Supreme Court of Pennsylvania, on appeal, "Granted Reversed, and Remanded."  Barnum v. State Farm Mut. Auto. Ins. Co., 652 A.2d 1319 (Table).  Nonetheless, I will consider Barnum in this case.

14

for first-party benefits under the MVFRL. Id. at 156. State Farm, dubious of the claim, submitted it to a PRO for evaluation. Id. The PRO determined that some of the medical treatment was unnecessary and State Farm refused to pay for such treatment. Id. Without seeking a reconsideration of the PRO determination, Barnum filed suit under § 1797 and § 8371. The trial court dismissed the complaint.[11] The Pennsylvania Superior Court affirmed the trial court, explaining the conflict between the statutes as follows:

> The several sections of the statute here being examined cannot be reconciled. The damages specified by the legislature in the event of wanton or bad faith conduct by an insurer are different, and the rate of interest to be awarded is also different. The provisions of 75 Pa.C.S. § 1797 are <u>narrowly limited to those situations in which a disputed claim is to be submitted to the PRO procedure</u>. <u>With respect to such claims</u>, the procedure to be followed is set forth with specificity, and the remedy, whether the procedure is followed or not, is set forth with equal specificity. If the procedure is followed by an insurer, its liability cannot be greater than as therein set forth. <u>If it follows the PRO procedure</u>, it cannot be subjected to damages for bad faith.

Barnum, 635 A.2d at 158-59 (emphasis added).

Addressing the identical issue in the context of whether certain treatment was medically necessary, our Court of Appeals affirmed a district court's dismissal of an insured's § 8371 claim. Gemini Physical Therapy & Rehabilitation, Inc., 40 F.3d at 67. The district court

---

[11]The Superior Court affirmed the trial court's finding that "Barnum had failed to exhaust his statutory remedy by failing to request reconsideration by the PRO." Id. at 156. The Supreme Court of Pennsylvania, in Terminato v. Pa Nat. Ins. Co., 645 A.2d 1287 (Pa. 1994), held otherwise, finding that "[t]he Legislature did not intend to impose reconsideration of the PRO determination as a precondition to the judicial resolution of a private contractual dispute." Id. at 1292.

15

reasoned "that the Pennsylvania legislature intended the MVFRL, 75 Pa.C.S. § 1797, to provide the exclusive first-party remedy for bad faith denials by insurance companies with respect to claims arising out of automobile accident injuries."  Our Court of Appeals relied on <u>Barnum</u>, finding the <u>Barnum</u> court's "statutory construction to be convincing" and predicting that "the Pennsylvania Supreme Court would similarly rule on this matter."  <u>Id.</u>

As observed by Plaintiff, the rationale of <u>Barnum</u> – "[t]he provisions of 75 Pa.C.S. § 1797 are narrowly limited to those situations in which a disputed claim is to be submitted to the PRO procedure" – indicates that § 8371 claims are not categorically foreclosed when medical benefits are at issue.   <u>Barnum</u>, 635 A.2d at 158.  (Br. Opp'n Def. Lexington's Mot. To Dismiss, at 7.)  Nothing in <u>Barnum</u> or <u>Gemini</u> suggests that § 1797 preempts § 8371 when the PRO process has not been initiated, followed or implicated.  See <u>Schwartz</u>, 1996 WL 189839, at *4.  Thus, based on the compelling rationale of <u>Barnum</u> and other courts, this Court finds that the door has been left open for § 8371 bad faith claims when outside the scope of § 1797, and that the Supreme Court of Pennsylvania would hold likewise.

Defendant Lexington persists that Plaintiff's claims of medical benefits are within the scope of § 1797 because they "amount to nothing more than a denial of first-party medical benefits." (Def. Lexington's Br. Supp. Mot. To Dismiss, Dkt. Entry 4, at 9.)    Here, the allegations do not call into question the reasonableness or necessity of the medical treatment.  In fact, the conduct in question occurred before the statutory scheme in § 1797 would be

triggered.

In summary, Plaintiff's allegations do not call into question the processes and remedies of § 1797, or concern the very purpose of § 1797 – to confirm that "treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary." 75 PA. CONS. STAT. § 1797(b)(1). Therefore, Plaintiff will be allowed to proceed with her § 8371 claim against Defendant Lexington.

III. CONCLUSION

For the reasons set forth in the forgoing memorandum, Defendant Frontier's Motion to Dismiss will be granted and Defendant Lexington's Motion to Dismiss will be denied. An appropriate Order follows.

s/ Thomas I. Vanaskie  
Thomas I. Vanaskie  
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KIMBERLY STEPHANO, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | 3:CV-07-0743 |
| | : | (JUDGE VANASKIE) |
| TRI-ARC FINANCIAL SERVICES, INC., | : | |
| FRONTIER ADJUSTERS, FRONTIER | : | |
| ADJUSTERS, INC., LEXINGTON | : | |
| INSURANCE COMPANY, | : | |
|     Defendants | : | |

## ORDER

NOW, THIS 4th DAY OF MARCH, 2008, for the reasons set forth in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

1. Defendant Frontier's Motion to Dismiss (Dkt. Entry 6) is GRANTED. Frontier Adjusters and Frontier Adjusters, Inc. are dismissed from this action.

2. Defendant Lexington's Motion to Dismiss (Dkt. Entry 3) is DENIED.

3. A telephonic scheduling conference shall be held on Friday, March 21, 2008, at 11:00 a .m. Plaintiff's counsel is responsible for placing the call to (570) 207-5720, and all parties should be ready to proceed before the undersigned is contacted.

                                                s/ Thomas I. Vanaskie
                                                Thomas I. Vanaskie
                                                United States District Judge